UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

**REUBEN ASH**
4103 Eldorado Avenue
Baltimore, Maryland 21215

    *Plaintiff*,

*v*.

**MARYLAND TRANSIT ADMINISTRATION**
6 St. Paul Street
Baltimore, Maryland 21202

    **SERVE ON:**

    T. Byron Smith
    Principal Counsel
    Six Saint Paul Street
    12th Floor
    Baltimore, Maryland 21202

    *Defendant.*

Civil Action No. _____

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Reuben Ash, by and through his attorneys, James M. Ray, II and Ledyard | Ray LLP, hereby brings this action against Defendant Maryland Transit Administration and alleges:

### Nature of the Action

1. This is an action for actual, compensatory and punitive damages, and for declaratory and injunctive relief, brought under Title II of the Americans with Disabilities Act of 1991 as Amended (2008) 42 U.S.C. §12131 *et. seq*. (the "ADA").

### Jurisdiction and Venue

2. The Court has subject matter jurisdiction of this case generally, under 28 U.S.C.

§1331, as a matter arising under federal law, and specifically, under 42 U.S.C. §12133, as a case arising under the ADA.

3. Venue is proper in the District of Maryland, as the material events and omissions giving rise to the claim are alleged to have occurred in or near Baltimore City, Maryland.

4. Plaintiff Reuben Ash ("Mr. Ash" or "Plaintiff") is a qualified individual with a disability and uses a wheelchair for mobility. Mr. Ash is paralyzed from the waist down.

5. Defendant Maryland Transit Administration ("MTA") is an agency of the State of Maryland, with a place of business at 6 St. Paul Street, Baltimore, Maryland 21202, that provides "designated public transportation" in and throughout the State of Maryland, including Baltimore City and Baltimore County, in that it owns and operates a "commuter bus service" along a "fixed route system" on "buses" (as those terms are defined in 49 C.F.R. § 37.3). MTA's services are made available to the general public.

6. At all times relevant to the proceeding, MTA was a covered "public entity" under the 42 U.S.C. §12131 *et seq.* in that it is a government entity providing services to the general public in the State of Maryland.

**Enforcement**

7. Pursuant to 42 U.S.C. §12133 of the ADA (which incorporates 29 U.S.C. §794a), an aggrieved person may commence a civil action seeking, and the Court may award and grant, actual, compensatory, and punitive damages, as well as declaratory and injunctive relief, based upon a past or impending discriminatory practice as defined in 42 U.S.C. §12132.

8. Pursuant to 42 U.S.C. §12134, the Attorney General was authorized to promulgate regulations to implement the purpose and intention of Title II of the ADA.

9. Pursuant to the regulations promulgated thereunder, specifically, 49 C.F.R. § 37.5, an entity providing designated public transportation, including commuter bus service, shall

not, on the basis of disability, deny any individual with a disability the opportunity to use the entity's transportation service for the general public, if the individual is capable of using that service.

10. At all times relevant to the events set forth in the complaint, Mr. Ash was a resident of Baltimore City who used and relied upon MTA's buses to travel throughout Baltimore City.

11. At all times relevant to the events set forth in the complaint, the bus drivers were employees of MTA, working within the scope of their employment.

12. On numerous occasions, beginning on or about October 6, 2016 (for purposes of this action) and continuing through 2017, MTA denied Mr. Ash the opportunity to use its commuter bus service, when its bus operators refused to lower the ramp that would enable him to gain entry into the bus independently, and/or otherwise refused to assist him in getting on the bus, oftentimes leaving him stranded, even though he was otherwise capable of using the bus service, and/or when MTA did not properly maintain the ramps on it buses.  These occasions include:

    a. On October 6, 2016, the Route 8 bus (Bus No. 08001) was traveling downtown near the E. Belvedere Avenue and York Road stop at approximately 3:30 p.m.  The driver saw Mr. Ash in his wheelchair, but refused to stop.

    b. On October 13, 2016, the Route 91 bus (Bus No. 11087) was traveling near the W. Belvedere Avenue and Reisterstown Road stop at approximately 9:00 a.m.  The driver saw Mr. Ash in his wheelchair but refused to stop.

c. On October 14, 2016, Bus No. 04100 was traveling on Rogers Avenue near the Reisterstown Road stop at approximately 8:10 a.m.  The driver told Mr. Ash that the disability ramp was not working.  However, the ramp can be manually operated.  When Mr. Ash asked the driver to operate the ramp manually, the driver did not respond and she closed the door and left without allowing Mr. Ash to enter.

d. On October 31, 2016, the Route 53 bus (Bus No. 04100) was traveling on Rogers Avenue near the Reisterstown Road stop at 3:06 p.m.  The bus driver refused to allow Mr. Ash to enter the bus, claiming that he did not want to ask passengers to leave the disability seats, when those passengers were not disabled and were not senior citizens.  The driver closed the door and left and Mr. Ash was forced to wait for another bus.

e. On November 4, 2016, Route 53 bus (Bus No. 13016) was travelling at the Rogers Avenue and Reisterstown Road stop at approximately 3:55 p.m.  The driver did not allow Mr. Ash to enter the bus and stated that he refused to ask passengers to vacate the disability seats.

f. On December 23, 2016, Bus No. 13026 was travelling at the W. Belvedere Avenue and Reisterstown Road stop at approximately 10:25 a.m.  The driver let several passengers on board, but closed the door, smiled, and left when Mr. Ash was the next person to board.

g. On January 13, 2017, the Route 5 bus (Bus No. 01113/17) was traveling at the Calvert Street and Fayette Street stop.  The driver refused to open the door and allow Mr. Ash to enter the bus.

4

      h.      On January 25, 2017, the Route 48 bus (Bus No. 08017) was traveling on at York Road near Northern Parkway stop at approximately 9:57 a.m. The driver refused to lower the ramp and drove off.

      i.      On March 3, 2017, the Route 44 bus was traveling at the Northern Parkway and York Road stop. The ramp was not working and the driver refused to manually operate the ramp. Mr. Ash was only able to enter and exit the bus when passengers volunteered to operate the ramp.

      j.      On April 18, 2017, the Route 36 bus was at Calvert Street and Guilford Avenue. The driver did not allow Mr. Ash to enter the vehicle.

      k.      On December 16, 2017, Bus 140009 was traveling at the North Avenue and Gay Street stop. Mr. Ash was waiting in line behind six (6) other persons. The driver allowed those six (6) persons to board the bus and then, while shaking her head "no," shut the door in front of Mr. Ash and drove away.

13.      Despite the issuance of a specific bulletin to its bus operators by MTA at the end of November, 2011, in which its employees were instructed to lower the ramp for people who use wheelchairs upon request, the discrimination continued, as multiple bus drivers would not lower the ramp after Mr. Ash asked that they do so. In addition, the MTA does not properly maintain the ramps on the buses despite their knowledge of frequent problems with the ramps.

14.      Mr. Ash filed several complaints with the MTA, but the violations of the ADA continued despite these complaints.

## **Damages**

15.      As a consequence of Defendant's discriminatory conduct, as set forth herein, Mr. Ash has suffered humiliation, severe inconvenience, injury and harm.

16. On many occasions, Mr. Ash waited for the bus to arrive and was refused entry onto the bus because the bus driver refused to lower the ramp and/or told Mr. Ash that the ramp was not working. Mr. Ash also, on some occasions, had to suffer the humiliation of being left at the bus stop or having to beg other passengers to operate the ramp manually when the driver claimed that the ramp was not working mechanically and the driver refused to operate the ramp manually.

17. As a further consequence of MTA's discrimination, Mr. Ash was left with no reliable means of transportation.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant, as follows:

    A.    Declare the Defendant's practices and actions, as alleged herein, were and are discriminatory and in violation of Title II of the Americans with Disabilities Act, particularly those sections of the Act that deal with public transportation agencies;

    B.    Enjoin Defendant and its employees, agents, successors, assigns and all other persons in active concert or participation with it, permanently, from refusing to make reasonable accommodations in its rules, policies, practices and services, where such accommodations may be necessary to afford Plaintiff equal opportunity to use and enjoy the services provided by Defendant;

    C.    Award actual and compensatory damages to Plaintiff, in such amount as would fully compensate him for the injuries and damages he incurred as a result of Defendant's discriminatory practice, policies and conduct;

    D.    Award punitive damages against Defendant, as appropriate;

    E.    Allow Plaintiff his attorneys' fees and costs incurred in this matter; and

    F.    Grant such other and further relief as the Court deems proper.

Respectfully Submitted,

**LEDYARD | RAY LLP**

By: /s/ James M. Ray
James M. Ray, II
Ledyard Ray LLP
1 North Charles Street, Suite 1215
Baltimore, Maryland 21201
Phone: (410) 807-8077
jim@ledyardray.com

*Counsel for Plaintiff*

### DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all issues raised herein.

/s/ James M. Ray